

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MARVIN D. PUTZIER, HOMETOWN )
HARDWARE, INC. d/b/a HOMETOWN )
ACE HARDWARE, *et al.*, )
) No. 13 C 2849
    Plaintiffs, )
) Chief Judge Rubén Castillo
v. )
)
ACE HARDWARE CORPORATION, )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' motion for leave to file a fourth amended complaint. (R.

110, Mot. for Leave.) The proposed fourth amended complaint alleges that Defendant Ace

Hardware Corporation ("Ace") fraudulently induced Plaintiffs to purchase "Vision 21" Ace

franchises and committed fraud when it knowingly provided manipulated and inflated sales

projections and false historic performance numbers to Plaintiffs. (*See* R. 110-1, Fourth Am.

Compl. ¶¶ 3-4.) For the reasons stated below, Plaintiffs' motion for leave to file a fourth

amended complaint is granted in part and denied in part.

## BACKGROUND

Although still at the pleadings stage, this case has become a procedural morass. And,

while the Court detailed the factual and complex procedural background of this lawsuit in

*Putzier v. Ace Hardware Corp.*, 50 F. Supp. 3d 964, 969-71 (N.D. Ill. 2014), for the purposes of

the present motion, it is necessary to discuss a few relevant developments. Plaintiffs' original

complaint, filed in the U.S. District Court for the Southern District of Florida, on January 6,

2012, was brought by two named plaintiffs as a class action. (R. 1, Compl. ¶¶ 9-10, 51-57.) The

complaint, which pled diversity jurisdiction as its basis for subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), alleged various fraud claims against Ace and, specifically, that "Ace provided standardized misleading information to potential and converting" franchisees in order to induce "Plaintiffs to enter into franchise agreements for the establishment and operation of Ace Vision 21 hardware stores." (*Id.* ¶¶ 2-3.) On March 1, 2012, Ace filed a separate action to compel arbitration in the U.S. District Court for the Northern District of Illinois and, on October 18, 2012, U.S. District Judge John W. Darrah granted Ace's motion to compel arbitration as to the two named plaintiffs. *Putzier*, 50 F. Supp. 3d at 971. While the motion to compel arbitration was pending, the district court in Florida stayed the original action. *Id.*

Following the arbitration ruling, Plaintiffs moved the district court in Florida to reopen the case and permit them "to file an amended complaint naming new class representatives whose franchise agreements did not include arbitration provisions." *Id.* The case was reopened and, on December 5, 2012, the first amended complaint was filed identifying six new named plaintiffs. (*Id.*; *see also* R. 21, First Am. Compl. ¶¶ 10-15.) This amended complaint alleged violations of the Illinois Franchise Disclosure Act ("IFDA"), 815 ILL. COMP. STAT. 705/1, *et seq.*, and state law claims for fraudulent inducement and fraud. (R. 21, First Am. Compl. ¶¶ 95-115.) Pursuant to Federal Rule of Civil Procedure 12(b)(6), Ace moved to dismiss the first amended complaint. *Putzier*, 50 F. Supp. 3d at 971. Without deciding the motion to dismiss, the Florida district court transferred the lawsuit to this Court. *Id.* Shortly after the transfer, Plaintiffs filed a motion for class certification, but, this Court stayed that motion pending a ruling on Ace's motion to dismiss. *Id.*

On June 25, 2014, the Court granted Ace's motion to dismiss. *Putzier*, 50 F. Supp. 3d 964. The Court concluded, among other things, that: (1) the laws of the Plaintiffs' home states

2

would apply to Plaintiffs' fraud and fraudulent inducement claims, *id.* at 976; (2) Plaintiffs' IFDA claims would be dismissed as untimely, *id.* at 979; (3) "the discovery rule tolled the statutes of limitations for Plaintiffs' claims of fraudulent inducement and fraud" and, thus, the Court would not dismiss those claims as untimely, *id.* at 981; (4) while two of the Plaintiffs did not have standing to pursue their claims against Ace, the Court would grant Plaintiffs "leave to move to substitute the bankruptcy trustee as a party to any amended complaint Plaintiffs may file," *id.* at 983-85; and (5) Plaintiffs "failed to meet the heightened pleading requirements imposed by Rule 9(b)" and, thus, the complaint would be dismissed, *id.* at 988. The Court granted Plaintiffs leave to amend the complaint and replead their fraudulent inducement and fraud claims "provided they are able to plead with sufficient specificity to meet the heightened pleading standard for fraud claims imposed by Rule 9(b)." *Id.*

On October 3, 2014, Plaintiffs filed their second amended complaint. (R. 90, Second Am. Compl.) In the second amended complaint, Plaintiffs abandoned their class allegations, expanded their individual allegations (from 25 pages to nearly 100 pages), and included at least twenty plaintiffs. (*Id.*) Before Ace could answer or otherwise plead, Plaintiffs filed a motion for leave to file a third amended complaint. (R. 94, Mot. for Leave to File Third Am. Compl.) The proposed third amended complaint totaled nearly 145 pages and included at least forty plaintiffs. (R. 94-1, Third Am. Compl.) On November 19, 2014, Ace filed a response to Plaintiffs' motion for leave to file a third amended complaint, (R. 98, Opp'n), and on December 19, 2015, Plaintiffs filed their reply, (R. 105, Reply.).

If all of this were not enough, Plaintiffs filed a motion for leave to file a fourth amended complaint, prior to the Court ruling on Plaintiffs' motion for leave to file a third amended complaint. (R. 110, Mot. for Leave to File Fourth Am. Compl.) Pursuant to Rule 15(a), Plaintiffs

sought leave to add additional trustees that represent the bankruptcy estates of franchisees

already included in the proposed third amended complaint. (*Id.* ¶¶ 1, 10.) The proposed fourth

amended complaint is 146 pages long, consists of 747 paragraphs, and includes 44 causes of

action.[1] (R. 110-1, Fourth Am. Compl.)

In response to Plaintiffs' motion for leave to file a fourth amended complaint, Ace states

that it will "stand on its [o]pposition to Plaintiffs' motion for leave to file a [t]hird [a]mended

[c]omplaint." (R. 111, Opp'n to Mot. for Leave to File Fourth Am. Compl. ¶ 3.) In that

opposition, Ace argues that Plaintiffs' motion for leave should be denied because: (1) the

shareholder and owner plaintiffs ("Individual Plaintiffs") lack standing to sue for any harm their

corporate entities suffered as a result of Ace's alleged fraud, (R. 98, Opp'n at 8-11); (2) fifteen of

the Plaintiffs lack standing to pursue their claims because their claims belong to the bankruptcy

estate trustees, and those trustees are either not pursuing these claims or have failed to take the

necessary steps to pursue them, (*id.* at 2-7)[2]; (3) ten of the Plaintiffs' claims are barred by the

doctrine of res judicata as a result of default judgments previously obtained by Ace, (*id.* at 11-

---

[1] Because of inartful pleading by Plaintiffs, it is not entirely clear to the Court how many plaintiffs are currently included in the proposed fourth amended complaint. While the parties are free to shorten the case caption in future pleadings, the case caption for the proposed fourth amended complaint is shortened and states "Marvin Putzier, Hometown Hardware, Inc. d/b/a Hometown Ace Hardware, *et al.*" (R. 110-1, Fourth Am. Compl.) Under the heading "Parties," some parties are specifically identified as a "Plaintiff" (e.g., "Plaintiff Robert Calvanese" or "Plaintiff Edward Pitochelli"), but some entities are not specifically identified as a "Plaintiff" (e.g., "Food Country, Inc., doing business as Stagecoach Ace Hardware"). (*Compare id.* ¶¶ 15, 17, *with id.* ¶ 18.) Indeed, the Court is not the only one confused; as Ace's response states that "[w]hile the identities of the would-be plaintiffs is not entirely clear, the [third amended complaint] seems to list as plaintiffs 53 different entities and individuals." (R. 98, Opp'n at 2.) This Court is troubled that after four years it is entirely unclear how many individuals, trustees of bankruptcy estates, and corporate entities Plaintiffs are seeking to add to this lawsuit. Needless to say, Plaintiffs' fifth (and final) amended complaint must resolve this confusion.

[2] Ace originally argued that nineteen of the Plaintiffs lacked standing because the trustees of their bankruptcy estates have chosen not to pursue these claims or the trustees had failed to follow the requisite procedures in pursuing the claims, (R. 98, Opp'n at 4); however, Ace has withdrawn its arguments as to four of the Plaintiffs—Anna and Donald Johndrow, James Weintraub, and Neil Drzewiecki, (R. 111, Opp'n to Mot. for Leave to File Fourth Am. Compl. ¶ 4).

4

14); (4) at least two Plaintiffs are obligated to arbitrate their disputes pursuant to agreements they signed with Ace, (*id.* at 14); and (5) Plaintiffs are improperly pleading their class claims in the alternative, (*id.* at 14-15).

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides a liberal standard for amending a complaint. *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2015). Specifically, Rule 15(a) states that "[t]he court should freely give leave when justice so requires," FED. R. CIV. P. 15(a)(2), and evinces a policy that a party "ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The Supreme Court has interpreted this rule to require a district court to allow amendment unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend." *Life Plans*, 800 F.3d at 357-58 (citing *Foman*, 371 U.S. 178, 182 (1962)). A district court also may "deny a proposed amended pleading if . . . the moving party . . . repeatedly fail[s] to cure deficiencies." *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 868-69 (7th Cir. 2013).

The granting or denying of a motion for leave to file an amended complaint is a matter entrusted to the sound discretion of this Court. *Foman*, 371 U.S. at 182. Indeed, "district courts have broad discretion to deny leave to amend where the amendment would be futile." *Charleston v. Bd. of Trs. of U. of Ill. at Chi.*, 741 F.3d 769, 777 (7th 2013) (citation and internal quotations marks omitted); *see also Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) ("We have recognized, on many occasions, that a district court does not abuse its discretion by denying a motion for leave to amend when the plaintiff fails to establish that the proposed amendment would cure the deficiencies identified in the earlier complaint."). Because a proposed amendment

5

is futile if it would not survive a motion to dismiss, the Court applies the same standard for leave to amend as on a Rule 12(b)(6) motion to dismiss. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015) ("[W]hen the basis for denial is futility, we apply the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim."); *see also McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) ("District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." (citation omitted)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Factual allegations are accepted as true at the pleading stage, but "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012). "[T]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In addition, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschroft*, 556 U.S. at 678. Finally, in deciding a Rule 12(b)(6) motion, the Court can consider "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the

complaint and are referred to in it, and information that is properly subject to judicial notice."

*Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).[3]

## ANALYSIS

### I.  Shareholder Standing

Ace argues that "leave to amend should . . . be denied because the Individual Plaintiffs do

not have standing to bring the claims asserted in the" proposed fourth amended complaint. (R.

98, Opp'n at 8.) Specifically, Ace states that "the Individual Plaintiffs utilized corporate

entities—a corporation or limited liability company—to enter into their respective Membership

and Brand Agreements with Ace" and, therefore, "only those entities have standing to sue for

any harm suffered as a result of their allegedly being fraudulently induced by Ace to enter into

the agreements." (*Id.*) In response, Plaintiffs argue that the "Plaintiff-owners of Ace franchise are

able to pursue claims against Ace . . . because allegations in the [amended complaint] establish

that Plaintiffs have injuries based upon individual claims." (R. 105, Reply at 10.) The

shareholder-standing rule and accompanying case law make clear that the Individual Plaintiffs do

not have standing to pursue their claims against Ace.[4]

---

[3] While Plaintiffs have not attached anything to their proposed fourth amended complaint, Ace has attached to its opposition the franchise agreements (the "Brand and Membership Agreements") between the parties, the pleadings from various bankruptcy proceedings, and the default judgments that Ace obtained against some of the Plaintiffs in other proceedings. (R. 98, Opp'n at 4 n.3; *see also* R. 98-2— R. 98-26, Exhibits B-Z to Opp'n.) Plaintiffs do not object to the Court's consideration of these documents or question their authenticity. (*See* R. 105, Reply.) Because these documents are either public records or are referenced in the fourth amended complaint and central to Plaintiffs' claims, they will be considered in connection with the motion. *See Williamson*, 714 F.3d at 436; *see also Seidel v. Byron*, 405 B.R. 277, 284-85 (N.D. Ill. 2009) (considering bankruptcy court records in connection with a motion to dismiss); *Putzier*, 50 F. Supp. 3d. at 973 ("The contents of the . . . Membership Agreements, and the circumstances surrounding their inception, are central to Plaintiffs' claims. . . . [Thus,] the Court will consider them in ruling on Ace's motion to dismiss.").

[4] Ace's shareholder-standing argument focuses largely on Plaintiffs' fraudulent inducement claims. (R. 98, Opp'n at 8-11.) However, because the Individual Plaintiffs' alleged damages in both their fraud and fraudulent inducement claims are identical to the damages suffered by their corporate franchises, the Court's holding applies to all of the Individual Plaintiffs' claims.

The shareholder-standing rule "is a prudential limitation on standing, a strand of the standing doctrine that prohibits litigants from suing to enforce the rights of third parties." *Nocula v. UGS Corp.*, 520 F.3d 719, 726 (7th Cir. 2008). In addition, "[a]lthough closely related to the requirements of constitutional standing, [courts] have held that the absence of prudential standing is not jurisdictional in the sense that Article III standing is, but nevertheless may be raised by the court on its own, even though the parties have not noticed it." *Id.* (citations and internal quotations marks omitted). "Under general principles of United States corporate law, as well as under Illinois law, a stockholder of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the stockholder because of an injury to the corporation." *Twohy v. First Nat'l Bank of Chi.*, 758 F.2d 1185, 1194 (7th Cir. 1985); *see also Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990).[5] The Seventh Circuit has explained the reasoning for this rule: if the corporation and the shareholder are allowed to sue for damages arising out of the same injury, the shareholder's suit would result in "double counting." *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi.*, 877 F.2d 1333, 1335 (7th Cir. 1989). Notably for purposes of this decision, the shareholder-standing rule applies equally to closely held corporations. *See Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 757 (7th Cir. 2008) (holding that shareholder-standing rule barred sole shareholder from

---

[5] The laws of each of the states in which the Individual Plaintiffs reside also prohibit shareholders from suing to recover for damages suffered by their corporations as a result of the actions of third parties. *See Yanow v. Teal Indus., Inc.*, 422 A.2d 311, 321 (Conn. 1979); *Knauf Fiber Glass, GMBh v. Stein*, 622 N.E.2d 163, 165 (Ind. 1993); *Barger v. McCoy Hillard & Parks*, 488 S.E.2d 215, 219 (N.C. 1997); *Adair v. Wozniak*, 492 N.E.2d 426, 428 (Oh. 1986); *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990); *Hill v. Ofalt*, 85 A.3d 540, 548 (Pa. Super. Ct. 2014); *Gemstar Ltd. v. Ernst & Young*, 901 P.2d 1178, 1186 (Ariz. Ct. App. 1995); *Nicholson v. Ash*, 800 P.2d 1352, 1356 (Colo. App. 1990); *James Talcott, Inc. v. McDowell*, 148 So.2d 36, 37 (Fla. Dist. Ct. App. 1962); *Crittenton v. Southland Owners Ass'n, Inc.*, 718 S.E.2d 839, 842-43 (Ga. Ct. App. 2011); *Mich. Nat'l Bank v. Mudgett*, 444 N.W.2d 534, 536 (Mich. Ct. App. 1989); *Todd v. Zaldo*, 403 S.E.2d 666, 668 (S.C. Ct. App. 1991); *Sabey v. Howard Johnson & Co.*, 5 P.3d 730, 735 (Wash. Ct. App. 2000).

bringing suit over his corporation's loss of a franchise); *see also Kush v. Am. States Ins. Co.*, 853 F.2d 1380, 1384 (7th Cir. 2000) ("The fact that the company is closely held does not persuade us to deviate from the general rule.").

There are two commonly recognized exceptions to the shareholder-standing rule. Specifically, a shareholder may sue for injuries to her corporation: "(1) where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, and (2) where the shareholder suffered an injury separate and distinct from that suffered by other shareholders." 12B William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 5911 (2000); *see also Twohy*, 758 F.2d at 1194 ("Certain often overlapping exceptions to the general rule have been recognized such as where a special contractual duty exists between the wrongdoer and shareholder or where the shareholder suffers an injury separate and distinct from that suffered by other shareholders." (citation and internal quotation marks omitted)). Under the second exception, "a shareholder [may] pursue an action originating from an injury to the corporation if he has suffered a direct, personal injury independent of the derivative injury common to all shareholders." *Rawoof*, 521 F.3d at 757. Neither of these exceptions applies to the Individual Plaintiffs.

First, Plaintiffs do not sufficiently allege that a special duty, such as a separate contract, exists between Ace and the Individual Plaintiffs. [6] While in some instances Plaintiffs allege that both the Individual Plaintiffs and the corporate entity Plaintiffs entered into franchise agreements with Ace,[7] the actual Brand and Membership Agreements demonstrate otherwise. In support of its opposition to Plaintiffs' motion for leave, Ace attached the Brand and Membership Agreements entered by the parties. (R. 98, Opp'n at 4 n.3; *see also* R. 98-2—R. 98-21, Exhibits B-U to Opp'n.) Every single one of these agreements was entered into between Ace and the corporate entity Plaintiffs. (*See, e.g.*, R. 98-8, Ace Brand Agreement at 2 ("This Agreement is made and entered into by and between ACE . . . and Lifestyle Capital Partners, LLC . . . ."); *see also* R. 98-16, Ace Brand Agreement at 2 ("This Agreement is made and entered into by and between ACE . . . and Conway Ace Hardware, Inc.").) In addition, the signatory to all of these agreements is a representative of the corporate entity. (*See* R. 98-8, Ace Brand Agreement at 9, 19; *see also* R. 98-16, Ace Brand Agreement at 9.) "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). The Brand and Membership Agreements make clear that the only contractual relationship that exists between Ace and the parties is between Ace and the corporate Plaintiffs. Thus, the Individual Plaintiffs cannot bring

[6] Plaintiffs argue that Ace waived its argument that the individual shareholders lack standing to pursue their claims when it did not raise the issue in the prior motion to dismiss. (R. 105, Reply at 10.) While "prudential limitations on standing can be waived," *Korte v. Sebelius*, 735 F.3d 654, 668 (7th Cir. 2013), this lawsuit is still in its pleadings stage and has yet to proceed to discovery. As such, Ace has not waived its right to raise the application of the shareholder-standing rule to the instant lawsuit. In addition, regardless of whether Ace should have made this argument sooner, the Court may consider prudential standing on its own initiative. *Nocula*, 520 F.3d at 726; *see also Andrews v. Gerace*, 13-CV-1521, 2014 WL 4627383, at *5 (N.D. Ill. Sept. 15, 2014) (dismissing the majority of plaintiff's claims based upon shareholder-standing rule at motion to dismiss stage and stating that "[q]uestions arising under the general shareholder-standing rule may be raised by the court *sua sponte*").

[7] (*See, e.g.*, R. 110-1, Fourth Am. Compl. ¶ 15 ("Mr. Calvanese and R.A.C.A. Enterprises, LLC entered into a franchise agreement to open Bridgemill Ace in 2009."); *see also id.* ¶ 17 ("Mr. Pitochelli and Ocean State Enterprises, Inc. entered into a franchise agreement in 2009 to open Newtown Ace.").)

suit individually and avail themselves of the independent duty exception to the shareholder-standing rule.

Second, the Individual Plaintiffs do not allege that they suffered an injury separate and distinct from the injuries suffered by other shareholders or by the corporation as a whole. As a preliminary matter, Plaintiffs make no attempt to differentiate between the claims asserted by the corporate entities and the owners of these corporate entities. Specifically, most of the causes of action for fraud and fraudulent inducement are brought jointly by the franchise entity and its shareholders. (*See, e.g.*, R. 110-1, Fourth Am. Compl. at 127 ("Fraudulent Inducement on Behalf of Plaintiffs Joseph Rasmus and R&H Resources"); *id.* at 129 ("Fraud on Behalf of Plaintiffs Joseph Rasmus and R&H Resources").) This conflation in pleading makes it difficult for this Court to determine which alleged injuries are unique to the Individual Plaintiffs.

In addition, the proposed fourth amended complaint makes clear that the Individual Plaintiffs' alleged injuries are identical to any other shareholder's injuries—the loss of their investment. For example, in support of Plaintiff West's fraudulent inducement claim, the proposed amendment alleges that "Mr. West was damaged as a result of Ace's actions by investing approximately \$300,000 . . . that he never would have but for Ace's fraud." (*Id.* ¶ 416; *see also id.* ¶ 452 (similar allegation as to Mr. Pitochelli); *id.* ¶ 464 (similar allegation as to Mr. Beam).) In support of Plaintiff Don West's fraud claim, the proposed amendment alleges that "[a]s a result of Ace's fraud, Mr. West was damaged by the amount he invested in reliance on Ace's statements." (*Id.* ¶ 421, *see also id.* ¶ 457 (similar allegation as to Mr. Pitochelli); *see also id.* ¶ 469 (similar allegation as to Mr. Beam).) The Individual Plaintiffs' damages boil down to the loss of their investment and the eventual loss of each of their corporate franchises. Courts have repeatedly held that allegations of this type are insufficient to establish a loss separate and

11

apart from other shareholders. *See, e.g., Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 646 (7th Cir. 2006) ("Corporate losses are investor losses as well . . . . [T]he long-standing rule is that a harm to a corporation that harms a shareholder only through a diminution in share price cannot amount to a distinct and separate injury because all shareholders are essentially harmed in the same manner." (internal quotation marks omitted)); *Lawson v. BNSF Ry.*, 2:15-CV-0094-TOR, 2015 WL 6442741, at *6 (E.D. Wash. Oct. 23, 2015) ("A reduction in [the company's] value would negatively impact any shareholder of [the company]."); *Fiore v. McDonald's Corp.*, No. CV-95-2708, 1996 WL 91908, at *5 (E.D.N.Y. Feb. 23, 1996) ("Because [the shareholders] assigned their rights as franchisees to their wholly-owned corporations, any injuries arising out of damage to the value of the franchises can only be asserted by these corporations.").

In defense of their claims, Plaintiffs argue that the individual shareholders have standing to pursue their claims because "they not only lost their investments, but they lost their homes, and in many instances had to declare personal bankruptcy." (R. 105, Reply at 11.) More specifically, Plaintiffs claim that the individuals have suffered losses "beyond those . . . [suffered by] the corporate entities," such as having to "sign personal guarantees," take "out a . . . home equity loan," withdraw money from their retirement accounts, "put up collateral to secure funding," "incur[] . . . credit card debt," and spend their "inheritance." (*Id.* at 10, 11 n.9 (citing R. 110-1, Fourth Am. Compl.).) However, courts have repeatedly held that the execution of a personal guarantee or a personal financial loss is not necessarily an injury distinct from those of other shareholders or the corporation. *See, e.g., Lawson*, 2015 WL 6442741, at *6 ("While Plaintiffs have arguably shown, at least on the pleadings, they suffered personal economic loss as a result of [the defendant's] conduct, this is insufficient because their personal loss merely derives from their employment at and ownership of Rail Logistics."); *Cent. Jersey Freightliner,*

12

*Inc. v. Freightliner Corp.*, 987 F. Supp. 289, 301 (D.N.J. 1997) (concluding that the sole shareholder did not have standing to maintain an action against the defendant despite the fact that the sole shareholder "was a guarantor of the financing transactions and was injured by misrepresentations made by defendant"); *Lui Ciro, Inc. v. Ciro, Inc.*, 895 F. Supp. 1365, 1381 (D. Hi. 1995) (concluding that the individual shareholders did not have standing to sue even though they had alleged that they had "risked their wealth, including their house, through their guarantees"); *Hengel, Inc. v. Hot 'N Now, Inc.*, 825 F. Supp. 1311, 1318 (N.D. Ill. 1993) ("[P]laintiffs' assertions of personal guarantees are insufficient to show that [individual plaintiffs] . . . have a private cause of action for their remaining claims."). Simply put, the Individual Plaintiffs' assertions of personal losses are insufficient to show that they have a right to pursue their claims individually against Ace.

Plaintiffs rely on two cases in support of their argument that they have "more than adequately demonstrated that they, in addition to their individual businesses, suffered substantial injuries." (R. 105, Reply at 11-12.) However, neither one of these cases persuades the Court. In *Eden v. Miller*, 37 F.2d 8 (2d Cir. 1930), an out of Circuit case from almost 90 years ago, the U.S. Court of Appeals for the Second Circuit permitted the individual plaintiffs' breach of contract claims because it was these individual plaintiffs who had "entered into an oral agreement with the defendant," and "the fact that the formation of a corporation was one of the things that the plaintiffs agreed to" did not change the outcome. *Id.* at 8-9. In addition, the court explicitly stated that the "corporation . . . was not a party" to the contract. *Id.* at 9. The facts of *Eden* demonstrate one of the exceptions to the shareholder-standing rule—a separate contractual relationship between the defendant and the individual shareholder. This Court has already

13

determined that Plaintiffs have not pled that a separate contractual relationship exists between the Individual Plaintiffs and Ace, and thus *Eden* does not apply.

Plaintiffs also rely upon *Zokoych v. Spalding*, 344 N.E.2d 805 (Ill. App. Ct. 1976), but that case is factually distinguishable. In *Zokoych*, the plaintiff—the former president and a shareholder of a corporation—brought suit against other shareholders of the same corporation alleging that they had "wrongfully and unlawfully conspired and agreed upon a plan to defraud plaintiff by forcing plaintiff out as an officer and director of [the corporation], by appropriating and converting . . . [for another shareholder's] use plaintiff's entire stock ownership in [the corporation], and by appropriating and converting the assets . . . ." *Id.* at 658. The plaintiff also alleged that "his ownership has been totally lost and destroyed," that "[h]is business reputation and good will have been irreparably destroyed, and that [h]is salary and other benefits were denied" to him. *Id.* at 659. In light of these allegations, the Illinois Court of Appeals concluded that these actions "caused injury both to the corporation and to plaintiff individually as a stockholder," but that the "gravamen of the complaint is an injury to the plaintiff." *Id.* at 663-64. As such, *Zokoych* is factually distinguishable from the instant lawsuit because the *Zokoych* allegations made clear that the individual plaintiff suffered an injury (i.e., damage to his reputation) separate and distinct from the other shareholders.

The Court recognizes that the Individual Plaintiffs have suffered catastrophic financial injuries—oftentimes the loss of their entire wealth and resultant bankruptcy—and that precluding their claims against Ace appears to be a harsh outcome. However, it is their wholly owned corporations that entered into the franchise agreements with Ace. These very same corporations are the ones that suffered the injury. All of the shareholders suffered the same injury—the loss of their investment. As such, the shareholder-standing rule prevents the Individual Plaintiffs from

14

pursuing these claims. However, this holding does not preclude the corporations from attempting to recover for their losses, and for any recovery to be directed straight to the Individual Plaintiffs as shareholders and owners.

The proposed fourth amended complaint, as alleged, demonstrates that the Individual Plaintiffs lack prudential standing. Thus, to the extent the shareholder and owner Plaintiffs bring individual claims on behalf of their Ace franchises, the Court denies Plaintiffs' motion for leave to amend the complaint as futile. *See, e.g., Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fl.*, 641 F.3d 1259, 1262 (11th Cir. 2011) ("Because we also conclude that [the plaintiffs] lacked prudential standing to sue the Secretary, we affirm the denial of the motion for leave to amend the complaint as futile."); *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 11 C 4175, 2012 WL 1032904, at *8 (N.D. Ill. May 9, 2014) (denying motion for leave to amend because, even after amendment, the insurance company would still "lack statutory and prudential standing" and, thus, the "proposed amendment would be futile").

## II.  Trustee Standing

Ace's next argument is that many of the Plaintiffs lack prudential standing because it is the trustees of their respective bankruptcy estates that are the real parties in interest.[8] (R. 98, Opp'n at 4-7.) In its original motion to dismiss, Ace argued that Plaintiffs Douglas Lorenz and Arvada Ace "did not have standing to pursue [the] claims in their own names" because Lorenz had filed for Chapter 7 bankruptcy protection on September 22, 2010, and "did not schedule any claim against Ace as an asset in his bankruptcy petition," nor did "the bankruptcy trustee administer such a claim." *Putzier*, 50 F. Supp. 3d at 981 (citation and internal quotation marks

---

[8] While the Court determines that the Individual Plaintiffs do not have standing to pursue their claims, for completeness, the Court will address each of Ace's additional arguments as they pertain to each of the Plaintiffs.

omitted). In the prior opinion, the Court explained that "Ace's argument that this action belongs to Lorenz's bankruptcy estate presents a prudential question of who is the 'real party in interest' under Rule 17(a)." *Id.* at 982. Specifically, "[f]iling a Chapter 7 bankruptcy petition creates a bankruptcy estate comprised of 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Id.* (quoting 11 U.S.C. § 541(a)(1)). "[V]irtually all property of the debtor at the time he files for bankruptcy—including any causes of action—becomes property of the bankruptcy estate." *Id.* (citation and internal quotation marks omitted). In addition, "[t]he trustee appointed in Chapter 7 bankruptcy alone has authority to administer and dispose of property"—including the right to pursue pre-petition causes of action. *Id.* (citation omitted).

After considering the allegations contained in Plaintiff Lorenz's claims, the Court concluded that Lorenz's "interest in this cause of action against Ace remains with the bankruptcy estate" and that "[t]he bankruptcy trustee, rather than Lorenz or Arvada Ace, is the real party in interest under Rule 17(a), and only the bankruptcy trustee appointed to Lorenz's Chapter 7 case is entitled to bring these claims." *Id.* at 983. However, in the interest of justice and fairness to the bankruptcy estate, the Court declined to dismiss Lorenz and Arvada Ace's claims due to their lack of prudential standing and, instead, granted Plaintiffs leave to "move to substitute the bankruptcy trustee as a party to any amended complaint Plaintiffs may file." *Id.* at 984-85. The Court also cautioned Plaintiffs that "[i]f the trustee does not seek to substitute into this action or ratify Lorenz's and Arvada Ace's claims, those claims will be dismissed." *Id.* at 985. Ace's present opposition to the motion for leave makes similar arguments regarding a slew of additional Plaintiffs, but with slight variations. (R. 98, Opp'n at 4-7.) The Court addresses these arguments in turn.

## A. Plaintiffs Who Have Filed Bankruptcy but Have not Named the Trustees as Parties in the Fourth Amended Complaint

Plaintiff George Martin filed for Chapter 7 bankruptcy protection on January 5, 2010, in the U.S. Bankruptcy Court for the Western District of North Carolina, and he did not schedule any claim against Ace as an asset in his petition.[9] R. 1, *In re Martin*, 10-30017 (Bankr. W.D.N.C.). Likewise, Plaintiff Edward Pitochelli filed for Chapter 7 bankruptcy protection on July 7, 2012, in the U.S. Bankruptcy Court for the District of Connecticut, and he did not schedule any claim against Ace as an asset in his petition. R. 1, *In re Pitochelli*, 12-21730 (Bankr. D. Conn.). Ace argues that Plaintiffs Martin and Pitochelli are named as plaintiffs in the fourth amended complaint; however, because they filed for bankruptcy "after the closure of their Ace stores," their claims "belong to their estates, and they have no right to pursue them in their own names." (R. 98, Opp'n at 6.) Plaintiffs' reply does not specifically address these two plaintiffs. The Court's reasoning in its original motion to dismiss is on point. *Putzier*, 50 F. Supp. 3d at 981-85.

The alleged fraudulent transactions upon which Plaintiffs Martin and Pitochelli base their claims—the purchase of their franchise and signing of the Brand and Membership Agreements—occurred prior to the filing of their bankruptcy cases in 2010 and 2012, respectively. (R. 110-1, Fourth Am. Compl. ¶¶ 134-154, 284-302.) Therefore, and Plaintiffs do not dispute, Plaintiffs Martin and Pitochelli's claims are "sufficiently rooted in the prebankruptcy past" and are, thus, "property of the bankruptcy estate[s]." *Putzier*, 50 F. Supp. 3d at 983. Because Plaintiffs Martin and Pitochelli's claims are property of the bankruptcy estates, the bankruptcy trustees—rather

---

[9] Prior to December 1, 2015, item 21 of a debtor's Schedule B-Personal Property form required that the debtor disclose "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," which includes any pending or potential lawsuits. *See* U.S. Bankruptcy Courts, Services & Forms, Schedule B- Personal Property (Superseded) (Official Form 6B), at 2, http://www.uscourts.gov/forms/bankruptcy-forms/schedule-b-personal-property.

than Martin or Pitochelli—are the real parties in interest under Rule 17(a), and only the bankruptcy trustees are entitled to bring these claims. *Id.*

The next question is "whether the Court should dismiss [Martin and Pitochelli's] claims due to their lack of prudential standing." *Id.* Plaintiffs' standard response throughout this litigation has been to request more time to cure these deficiencies. *Id.* at 983 ("Plaintiffs argue that . . . the Court should grant time for the bankruptcy trustee appointed to Lorenz's case to consider whether to pursue this claim[.]"); *see also* R. 105, Reply at 9. Plaintiffs' requests can go no further. This Court has given Plaintiffs ample time to identify and name the proper parties in this lawsuit. In fact, the Court directed Plaintiffs to name the proper parties in this lawsuit nearly two years ago. *Putzier,* 50 F. Supp. 3d at 985. In addition, Ace pointed out these deficiencies as they relate specifically to Plaintiffs Pitochelli and Martin in its opposition to Plaintiffs' motion for leave to file a third amended complaint, (R. 98, Opp'n at 6); however, Plaintiffs did not cure these deficiencies when they sought leave to file their fourth amended complaint, (R. 110-1, Fourth Am. Compl. ¶¶ 17, 34). Despite having abundant notice of the problem, Plaintiffs continually fail to properly name, join, ratify, or substitute these real parties in interest.

As the Court explained in its first order, "[i]f the trustee does not seek to substitute into this action or ratify [the plaintiffs'] . . . claims, those claims will be dismissed." *Putzier,* 50 F. Supp. 3d at 985. As such, because Plaintiffs Martin and Pitochelli lack prudential standing, Plaintiffs' motion for leave to file an amended complaint as to these Plaintiffs' claims is denied. *See, e.g., Nationwide Acceptance Corp. v. Markoff, Krasny, Goldman, Grant,* 99 C 5632, 2000 WL 1230434, at *4 (N.D. Ill. Aug. 23, 2000) (granting motion to dismiss after the counter-claimant was informed of the "issue of improper standing," but "[s]even months later, the court is not satisfied that [the counter-claimant's] claim was properly abandoned, and the court has not

18

received notice that the trustee ratified [the counter-claimant's] commencement of this case"); *Davis v. Avco Fin.*, 158 B.R. 1000, 1003-04 (N.D. Ind. 1993) (dismissing complaint and sanctioning counsel after debtor plaintiffs were advised that the trustee was the real party in interest to bring the lawsuit at a pre-trial conference and were "given sufficient time to correct the procedural error, but . . . failed to do so").

## B. Whether Some of the Plaintiffs' Bankruptcy Estates Have Abandoned These Claims, thus Permitting Plaintiffs to Pursue the Claims Themselves

Next, Ace argues that the trustees of the bankruptcy estates of ten of the Plaintiffs "have either not authorized, or have affirmatively rejected, Plaintiffs' counsel's request to re-open the estates to pursue the claims at issue," and because these claims belong to the bankruptcy estates and have not been properly abandoned by the trustee to the debtor Plaintiffs, "Plaintiffs have no right to pursue them." (R. 98, Opp'n at 5-6.) In response, Plaintiffs effectively concede this issue when they argue that "[t]he issues that Ace raises can be—and are in the process of being—cured" and that "Plaintiffs' counsel has worked diligently with the trustees to represent the bankruptcy estate wishing to proceed, and have continued to represent individual Plaintiffs whose estates have abandoned the claims." (R. 105, Reply at 9.)

In order to determine if Plaintiffs have named the proper parties and who may pursue these claims against Ace, the Court must decide whether any of the Plaintiffs' bankruptcy estates have abandoned these causes of action. If so, these Plaintiffs may pursue their claims against Ace. If not, the trustee of their bankruptcy estate is the real party in interest and *only* the trustee is permitted to pursue these claims. As discussed fully below, as to Plaintiffs Gary and Kathy King, Andrew and Laura Gzibovskis, Michael Grollmus, and Walter Drzewiecki, Jr., Ace is correct that the trustees of their bankruptcy estates have chosen not to pursue these claims, the claims have not been properly abandoned by the trustees, and, because the claims remain the

property of the bankruptcy estate, these Plaintiffs cannot pursue them here. However, as to Plaintiffs Gaylord Hardware, LLC, and Richard and Daina Gzibovskis, their claims against Ace have been abandoned by operation of law.

A plaintiff may regain standing to pursue a cause of action that vested in the bankruptcy estate only if that cause of action is abandoned pursuant to 11 U.S.C. § 554. *See also Matthews v. Potter*, 316 F. App'x 518, 521-22 (7th Cir. 2009) (if the claims are abandoned, title to the claim reverts to the debtor as if the debtor had "owned [it] continuously and the bankruptcy never happened"); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 617 (7th Cir. 2002) ("[F]or when property of the bankrupt is abandoned, the title reverts to the bankrupt, nunc pro tunc, so that he is treated as having owned it continuously[.]" (citation and internal quotation marks omitted)); *Enyedi*, 371 B.R. 327, 333 (Bankr. N.D. Ill. 2007) ("A trustee's statutory right to exclusivity ceases once the property has been abandoned."). The "requirements are exacting" for abandonment of an asset, *Morlan*, 298 F.3d at 618, and may occur in one of three ways:

(1) [a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate[;]

(2) [o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate[; or]

(3) [u]nless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor . . . .

11 U.S.C. § 554(a)-(c). "Property not abandoned under one of these three subsections remains property of the debtor's estate—'unless the court orders otherwise.'" *Morlan*, 298 F.3d at 618 (quoting 11 U.S.C. § 554(d)). Indeed, the Seventh Circuit has held that "if a legal claim is not scheduled or otherwise administered by the time the bankruptcy is closed, it forever remains

20

property of the estate, and the trustee remains the real party in interest." *Matthews*, 316 Fed. App'x at 521. Therefore, "[a]bsent abandonment, a debtor cannot pursue a cause of action for his or her own benefit." *Enyedi*, 371 B.R. at 333.

### a. Plaintiffs Gary and Kathy King, Andrew and Laura Gzibovskis, Michael Grollmus

Upon review, Plaintiffs Gary and Kathy King, Andrew and Laura Gzibovskis, and Michael Grollmus lack standing to pursue their claims individually because their claims have not been abandoned by their respective bankruptcy estates. [10] All five of these Plaintiffs filed petitions for liquidation under Chapter 7 of the United States Bankruptcy Code. In addition, all of their debts have since been discharged and their bankruptcy cases have closed. *See* R. 1, R. 18, *In re King*, 11-bk-01747-RJH (Bankr. D. Ariz.); R. 1, R. 39, R. 40, *In re Gzibovskis*, 08-12303 (Bankr. S.D. Ind.); R. 1, R. 30, *In re Grollmus*, 11-bk-13372 (Bankr. S.D. Oh.). These five Plaintiffs do not dispute that their claims against Ace existed at the time they each filed for bankruptcy, thus making them assets of their respective bankruptcy estates. *See* 11 U.S.C. § 541(a). And, as part of the estate, these causes of action passed to the control of the trustee of the bankruptcy estate along with all of their other assets. *Id.* A review of the dockets for these bankruptcy cases provides no indication that the courts ever held a hearing to consider abandonment or ordered the trustee to abandon the claim pursuant to 11 U.S.C. § 554(a)-(b); therefore, these claims could *only* have been abandoned if these Plaintiffs listed the claim on their schedule of assets. *See* 11 U.S.C. § 554(c). However, none of these five Plaintiffs listed a potential cause of action against Ace in their bankruptcy filings. R. 1, Schedule B, *In re King*,

---

[10] Ace includes Plaintiff Kings Ace Hardware, Inc., in its argument that the Kings lack standing to pursue their claims, (R. 98, Opp'n at 5); however, there is no indication that Kings Ace filed for bankruptcy. As such, the Court's discussion regarding whether the Kings have prudential standing to assert their claims, does not apply to Kings Ace.

11-bk-01747-RJH (Bankr. D. Ariz.); R. 1, Schedule B, *In re Gzibovskis*, 08-12303 (Bankr. S.D. Ind.); R. 1, Schedule B; *In re Grollmus*, 11-bk-13372 (Bankr. S.D. Oh.).[1] In addition, none of these five Plaintiffs have sought to reopen their bankruptcy cases in order to amend their bankruptcy schedules to include their cause of action against Ace (which, if successful, would allow their creditors an opportunity to benefit from any potential recovery realized in this lawsuit) or to seek an exemption of their claims.

Thus, because the trustees did not abandon these assets nor administer them as part of the bankruptcy cases, the unabandoned assets—the causes of action against Ace—remain property of the bankruptcy estates for these five Plaintiffs. *See, e.g., McPherson-Moses v. Autumn Home Care*, No. 11-C-50138, 2012 WL 3041813, at *2 (N.D. Ill. July 23, 2012) ("Since no trustee has abandoned the claim, it remains the property of the bankruptcy estate."); *Davis*, 158 B.R. at 1002 ("Property of the estate that has not been expressly abandoned or administered by the trustee at the time the case is closed remains property of the estate. Consequently, the cause of action was initially property of the estate, and remained property of the estate even though the case was closed."). As such, these five Plaintiffs are not the proper parties to pursue these claims, and *only* the trustees of their bankruptcy estates can bring these claims. *See* 11 U.S.C. § 541(a)(1); *see also EEOC v. J.D. Streett & Co., Inc.*, No. 05-cv-4186, 2006 WL 3076667, at *2 (S.D. Ill. Oct. 30, 2006) (concluding that "the absence of this cause of action from [the plaintiff's] bankruptcy schedule . . . indicate[s] that the Trustee did not even know this cause of action existed" and, thus, "the Trustee is the real party in interest in this action").

---

[1] These five Plaintiffs also did not claim an exemption on their Schedule C filings for a potential lawsuit against Ace. R. 1, Schedule C, *In re King*, 11-bk-01747-RJH (Bankr. D. Ariz.); R. 1, Schedule C, *In re Gzibovskis*, 08-12303 (Bankr. S.D. Ind.); R. 1, Schedule C, R. 17, Am. Schedule C, *In re Grollmus*, 11-bk-13372 (S.D. Oh.).

Second, while the trustees of these bankruptcy estates are the real parties in interest, the record makes clear that these trustees have chosen not to pursue these claims. Plaintiffs explicitly state that the trustees have been informed of this lawsuit. (R. 110-1, Fourth Am. Compl. ¶¶ 37 n.3, 41 n.4, 46 n.6.) Indeed, Plaintiffs' proposed third amended complaint demonstrates that these trustees were informed of this lawsuit nearly eighteen months ago. (R. 94-1, Third Am. Compl. ¶¶ 37 n.3, 41 n.4, 46 n.6.) Despite knowledge of the lawsuit, none of these trustees have made a request to reopen the bankruptcy estates. (*See, e.g.*, R. 110-1, Fourth Am. Compl. ¶¶ 37 n.3, 41 n.4 (stating that Plaintiffs' counsel contacted each of the trustees for the bankruptcy estates, and "should the trustee wish to reopen the estate, Plaintiffs will move to substitute in the trustee as the proper plaintiff").) In addition, there has been no indication to this Court that any of these trustees intend to pursue these claims.[12] In fact, the trustee for Plaintiff Grollmus's bankruptcy estate has explicitly "indicated that he would not be opening the bankruptcy estate to pursue Mr. Grollmus's claims." (*Id.* ¶ 46 n.6.) At bottom, these five Plaintiffs lack standing to pursue their claims and the real parties in interest have not taken any steps to pursue this lawsuit.

Like Plaintiffs Martin and Pitochelli, the Court will not allow these five Plaintiffs more time to cure this longstanding deficiency. As such, because these five Plaintiffs lack prudential standing and the trustees of their respective bankruptcy estates do not intend to pursue this lawsuit, Plaintiffs' motion for leave to file an amended complaint as to these Plaintiffs' claims is denied. *See, e.g.*, *Becker v. Verizon North, Inc.*, No. 06–2956, 2007 WL 1224039, at *1-2 (7th Cir. Apr. 25, 2007) (affirming the district court's dismissal of the plaintiff's action for lack of standing where the plaintiff failed to disclose a pending employment discrimination cause of

---

[12] Notably, if any of the former trustees desired to be included as the real party in interest in this lawsuit, the bankruptcy case would have to be reopened and the trustee reappointed to represent the estate. *See Davis*, 158 B.R. at 1003 (rejecting former trustee's purported ratification because he had been relieved of his duties upon the closing of the bankruptcy estate).

23

action on her bankruptcy schedules); *Heartland Direct, Inc. v. Chevron U.S.A., Inc.*, No. 06 C

1029, 2006 WL 2524139, at *4 (N.D. Ill. Aug. 30, 2006) ( "[b]ecause [p]laintiff did not list the

breach of contract cause of action against [d]efendant in its schedule of assets, the trustee could

not have abandoned the asset and [p]laintiff has no standing to bring the cause of action").

### b. Plaintiff Walter Drzewiecki, Jr.

Despite the fact that Plaintiff Walter Drzewiecki's bankruptcy case is still pending, the

above reasoning applies with equal weight to his claims. The fourth amended complaint names

Walter Drzewiecki as a plaintiff and states that Plaintiffs' counsel contacted the trustee of his

bankruptcy estate, but the trustee has not yet indicated an intention to pursue these claims. (R.

110-1, Fourth Am. Compl. ¶ 48 n.7.) Similar to the above Plaintiffs, Walter Drzewiecki is not

the real party in interest.

On January 7, 2010, Mr. Drzewiecki filed a petition for liquidation under Chapter 11,

which was subsequently converted to a Chapter 7 bankruptcy. R. 1, R. 267, *In re Drzewiecki*, 10-

20038-dob (Bankr. E.D. Mich.). Mr. Drzewiecki does not dispute that his claims against Ace

existed at the time he filed for bankruptcy, thus making it an asset of the estate. *See* 11 U.S.C. §

541(a). While the bankruptcy court has ordered abandonment as to other assets, there is no

indication that the bankruptcy court has held a hearing to consider abandonment or ordered the

trustee to abandon the claim against Ace pursuant to 11 U.S.C. § 554(a)-(b). Regardless of

whether the cause of action has been included in Mr. Drzewiecki's bankruptcy schedules (it does

not appear that it has), because the bankruptcy case is still pending, the cause of action cannot

have automatically been abandoned pursuant to 11 U.S.C. § 554(c). Thus, Mr. Drzewiecki

cannot pursue these claims, and *only* the trustee can bring these claims on behalf of his

bankruptcy estate.

Second, while the trustee is the real party in interest in this lawsuit, the record makes clear that the trustee, as of today's date, has chosen not to pursue these claims. The trustee has been informed of this lawsuit, (R. 110-1, Fourth Am. Compl. ¶ 48 n.7); however, the trustee has neither filed any documents in the bankruptcy case demonstrating his intent to pursue these claims nor given any indication to this Court of a desire to pursue these claims. Thus, because Plaintiff Walter Drzewiecki lacks prudential standing to pursue his claims and the real party in interest has chosen not to pursue this lawsuit, Plaintiffs' motion for leave to file an amended complaint as to Walter Drzewiecki's claims is denied. *See Becker*, 2007 WL 1224039, at *4; *Heartland Direct*, 2006 WL 2524139, at *4; *Nationwide Acceptance*, 2000 WL 1230434, at *4-5; *Davis*, 158 B.R. at 1003.

### c. Plaintiffs Gaylord Hardware and Richard and Daina Gzibvoskis

The Court reaches a different result as to Plaintiffs Gaylord Hardware and Richard and Daina Gzibovskis because, pursuant to 11 U.S.C. § 554(c), their claims were abandoned.

Plaintiff Gaylord Hardware filed for bankruptcy on November 4, 2009, and on August 1, 2013, the bankruptcy trustee was discharged and the case was closed. R. 1, R. 240, *In re Gaylord Hardware LLC*, No. 09-24018 (Bankr. E.D. Mich.).[13] At the time of Gaylord Hardware's initial bankruptcy petition, it did not include a potential cause of action against Ace in its bankruptcy schedules. *Id.* at R. 1, Schedule B. However, on December 18, 2009, Gaylord Hardware filed its Amended Schedule B. *Id.* at R. 86-1, Am. Schedule B. Under item 21 of its Amended Schedule B, Gaylord Hardware included "[p]otential lawsuit against ACE for breach of contract." *Id.* at Am. Schedule B at 2. While Gaylord Hardware stated that the lawsuit against Ace would be for

---

[13] Originally, Gaylord Hardware filed for bankruptcy under Chapter 11, but the bankruptcy court converted the case to a Chapter 7 bankruptcy. R. 137, Order Converting Case to Chapter 7, *In re Gaylord Hardware LLC*, No. 09-24018 (Bankr. E.D. Mich.).

breach of contract and not fraud, this disclosure nonetheless put the trustee and all of its creditors on notice of a potential claim against Ace. Because the bankruptcy trustee did not affirmatively abandon Gaylord Hardware's claim, nor did Gaylord Hardware request that the bankruptcy court order such abandonment, 11 U.S.C. §§ 554(a) and (b) are inapplicable. However, pursuant to 11 U.S.C. § 554(c), because Gaylord Hardware properly scheduled a potential lawsuit against Ace and the bankruptcy court closed the bankruptcy estate on August 1, 2013, Gaylord Hardware's cause of action against Ace was automatically abandoned on that date.[14] *See, e.g., Williams v. United Techs. Carrier Corp.*, 310 F. Supp. 2d 1002, 1012 (S.D. Ind. 2004) ("Because Williams properly scheduled his race discrimination claim, that claim was abandoned pursuant to 11 U.S.C. § 554(c) when the bankruptcy court closed the case. Accordingly, the race discrimination claim reverts to Williams as if he had never filed for bankruptcy protection. Williams, therefore, has standing to maintain the instant action.").

Plaintiffs Richard and Daina Gzibovskis filed for bankruptcy on April 21, 2010, and, on August 18, 2010, the bankruptcy trustee was discharged and the case was closed. R. 1, R. 19, *In re Gzibovskis*, 10-05683 (Bankr. S.D. Ind.). On their Schedule B, these Plaintiffs listed "Potential claim against Ace Hardware Corporation." *Id.* at R. 1, Schedule B-Personal Property. Because Plaintiffs Richard and Daina Gzibovskis properly scheduled a lawsuit against Ace, their cause of

---

[14] Ace incorrectly argues that Gaylord Hardware and Richard and Daina Gzibovskis lack standing to pursue their claims because, in part, their claims were "not properly scheduled" and therefore did not revert back to Plaintiffs. (R. 98, Opp'n at 5-6.) In response, Plaintiffs generally argue that it would be unfair not to let Plaintiffs pursue their claims against Ace, (R. 105, Reply at 9-10); however, they do not substantively discuss any of Plaintiffs' bankruptcy filings, including whether any of these claims were properly abandoned under 11 U.S.C. § 554. In order to determine which party is correct in this dispute, the Court has had to undertake the painstaking task of scouring the bankruptcy dockets of *thirteen* of the Plaintiffs' bankruptcy cases. In at least one case, the bankruptcy case has lasted six years and includes over 350 docket entries. *See In re Drzewiecki*, 10-20038 (Bankr. E.D. Mich.). This is counsel's responsibility, not the Court's.

26

action was abandoned, pursuant to 11 U.S.C. § 554(c), on August 18, 2010—the date that the

bankruptcy case was closed. *See Williams*, 310 F. Supp. 2d at 1012.[15]

As such, the bankruptcy estates of Plaintiffs Gaylord Hardware and Richard and Daina

Gzibovskis have abandoned the claims against Ace. Thus, Plaintiffs' motion for leave is granted

as to Plaintiff Gaylord Hardware's claims.[16]

### C. Whether the Bankruptcy Court Must Approve of Counsel's Retention Prior to the Filing of These Claims

Next, Ace argues that the trustees of the bankruptcy estates for Plaintiffs Mary Grollmus,

Husk Family Hardware, Inc., and South Asheville Hardware, Inc., should not be permitted to

pursue claims against Ace because, while the fourth amended complaint "alleges that [these]

trustees are filing suit to pursue the claims of certain debtors . . . the records of the bankruptcy

---

[15] In their reply, Plaintiffs claim that the trustee of Richard and Daina Gzibovskis' bankruptcy estate expressly abandoned their claims in an email to Plaintiffs' counsel. (R. 105, Reply at 9; R. 105-1, Decl. of A. Keller ¶ 6.) In support of this assertion, Plaintiffs attach as an exhibit an email dated November 11, 2014, with the subject line of "10-05683 Gzibovskis Claim against Ace Hardware," which states, "I am writing to let you know that the Trustee has withdrawn his motion to reopen this bankruptcy case. The Trustee will abandon the claim." (R. 105-2, Ex. A to Decl. of A. Keller.) Contrary to Plaintiffs' conclusory statement, this email does not result in the legal abandonment of these claims. As explained above, the "requirements are exacting" for abandonment of an asset, *Morlan*, 298 F.3d at 618, and an email from the trustee to Plaintiffs' counsel declaring abandonment will not suffice. *See, e.g., In re Ring*, 138 F. App'x 834, 837 (7th Cir. 2005) ("[The debtor] insists that the trustee abandoned her . . . claim by promising not to pursue it during a telephone conversation with her bankruptcy lawyer . . . . [However,] a trustee cannot abandon property of the estate without notice to creditors, which was not given here."); *Morlan*, 298 F.3d 617-18 (concluding that, among other attempts at abandonment by the trustee, "a letter from the trustee to [the plaintiff's] lawyer stating that the trustee had decided to 'abandon any claim the bankruptcy estate might have to any future proceeds arising from that lawsuit'" was "not in compliance with section 554 and was therefore ineffective"); *In re Residential Cap., LLC*, 15 Civ. 3248 (KPF), 2016 WL 796860, at *13 (S.D.N.Y. Feb. 22, 2016) ("Rozier argues that the chapter 7 trustee abandoned [the] claims . . . and that this abandonment was evidenced by the trustee's email to Rozier stating that he did not object to Rozier asserting claims she may possess . . . . [However,] [b]ecause there has been neither notice to creditors nor a hearing regarding abandonment, the Bankruptcy Court did not err in finding that the chapter 7 trustee had not abandoned Rozier's claims, and thus Rozier lacks standing to assert any claims . . . ."). Regardless, as detailed above, Plaintiffs Richard and Daina Gzibovskis properly included their claim against Ace in their bankruptcy schedules and, thus, their claims were abandoned at the close of their bankruptcy cases.

[16] The Court has already concluded that Plaintiffs Richard and Daina Gzibovski lack prudential standing and cannot bring claims for the losses associated with their corporate franchises.

proceedings indicate that the trustee never actually sought, or received, authority to do so." (R. 98, Opp'n at 6.) Specifically, Ace argues that these trustees should not be permitted to proceed with these claims because they have failed to comply with 11 U.S.C. § 327(a), which, according to Ace, "dictates that the employment of professionals," such as counsel, "must be approved by the court *prior* to the rendering of any services." (*Id.* (emphasis in original).) Plaintiffs do not substantively address this argument. Regardless, the plain language of Section 327(a) does not support Ace's position and, ultimately, does not prevent the trustees from pursuing these claims.

Section 327(a) provides the following:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). Section 327(e) states that:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e). The Seventh Circuit has explained that "the only difference between the two subsections is the scope of the retention. Section 327(a) governs retention of counsel to handle the entire bankruptcy proceeding for the debtor, section 327(e) the retention of counsel to handle specific matters." *In re Devlieg, Inc.*, 56 F.3d 32, 34 (7th Cir. 1995). Thus, Ace's invocation of Section 327(a) is improper because the trustee of these estates would not be seeking to hire Plaintiffs' counsel to represent the entire bankruptcy estate; instead, the retention of counsel would be for the narrow purpose of pursuing these claims against Ace in the instant lawsuit.

28

Notwithstanding Section 327(a) and Section 327(e)'s applicability, neither precludes the trustees from hiring Plaintiffs' counsel to pursue claims against Ace. While neither party provides the Court with a single case that would support or refute Ace's position, the Court has identified two cases which are instructive. In *In re Singson*, 41 F.3d 316 (7th Cir. 1994), a law firm appealed a bankruptcy court's determination that the law firm was not entitled to retroactive approval of attorneys' fees because they did not adequately demonstrate the existence of an "extraordinary situation" that would warrant the approval of the fees. *Id.* at 318. In affirming the bankruptcy court's determination that the firm did not demonstrate the requisite "excusable neglect" in its tardy requests for fees, the Seventh Circuit discussed the scope of Section 327(a). The court explained:

> Section 327(a) . . . provides that a trustee may employ attorneys and other professionals with the court's approval. *It does not say that the approval must precede the engagement*, and neither does Fed. R. Bankr. P. 2014(a), which implements § 327(a). Prior approval is strongly preferred because it permits close supervision of the administration of an estate, wards off volunteers attracted to the kitty, and avoids duplication of effort. *Nothing in the statute forbids or even reproves belated authorization*, however; timing is a matter of sound judicial administration rather than legislative command. . . .
>
> *Neither the Code nor the Rules of Bankruptcy Procedure suggest that lawyers and other professionals should take extraordinary care to ensure that authorization precedes the rendition of services.* Ordinary care—that is, cost-justified precautions—ought to suffice. If the trustee and counsel have taken the appropriate precautions, and something nonetheless goes awry, authorization after the fact is proper.

*Id.* at 319 (emphasis added) (citations and internal quotation marks omitted). Thus, as the *Singson* court explained, nothing in the plain language of Section 327(a)—or Section 327(e)— explicitly requires that the bankruptcy court approve of an attorney prior to the "rendition of services." *Id.* While it may be "strongly preferred" to obtain permission first, *id.*, and Plaintiffs' counsel risks the very real possibility of not obtaining authorization for compensation from the

29

bankruptcy court, there is nothing in Section 327(a) or Section 327(e) that forbids these trustees from hiring Plaintiffs' counsel to pursue these claims in this Court prior to the bankruptcy court's approval.

In addition, at least one other district court has rejected a similar argument. In *Standard Chlorine of Delaware, Inc. v. Sinibaldi*, No. 91-188-SLR, 1995 WL 562285 (D. Del. Aug. 24, 1995), the counter-defendant filed a motion to dismiss the counterclaim arguing that the counter-plaintiff had filed for bankruptcy under Chapter 7 and that the counter-plaintiff did not have "standing to pursue its counterclaim . . . because, once the trustee was appointed, only the trustee was authorized to bring the present claim." *Id.* at *4. In response, the counter-plaintiff argued that the trustee had provided authorization to file the counterclaims on behalf of the counter-plaintiff's bankruptcy estate and also asserted that while the trustee would "ultimately need Court approval before [the trustee] can pay or commit to pay any legal fees, [a trustee] ha[s] full authority, without Court approval, to file or authorize the filing of claims on the estate's behalf." *Id.* In reply, the counter-defendant argued, among other contentions, that "the trustee could not have retained counsel . . . without court approval." *Id.* at *5. The *Standard Chlorine* court expressly rejected the counter-defendant's request to dismiss the counterclaims. The court concluded that "the counterclaim is not barred by the trustee's failure to secure bankruptcy court approval under § 327. While arguably such approval should have been secured prior to the assertion of the counterclaim, and indeed must be secured prior to compensation, the court will not dismiss the counterclaim for this failure." *Id.* at *6.

The Seventh Circuit's discussion in *Singson* regarding the scope of Section 327(a) and the district court's explicit rejection in *Standard Chlorine* of this argument persuade this Court to reject Ace's argument. The fourth amended complaint states that the trustees of the bankruptcy

estates for Husk Family Hardware, Inc., South Asheville Hardware, Inc., and Mary Grollmus are "fil[ing] this lawsuit in order to pursue the claims" of the debtor Plaintiffs. (R. 110-1, Fourth Am. Compl. ¶¶ 29, 30, 47.) This is sufficient to demonstrate that Plaintiffs' counsel has received permission from the trustees to file these claims on behalf of the bankruptcy estates. Simply put, and contrary to Ace's arguments, nothing in Sections 327(a) or 327(e) requires that the bankruptcy court approve the trustee's retention of counsel "*prior* to the rendering of any services." (R. 98, Opp'n at 6.) As such, the trustees for the bankruptcy estates of Husk Family Hardware and South Asheville Hardware have standing to pursue these claims, and Plaintiffs' motion for leave is granted as to the claims of these Plaintiffs.[17]

## III.    Res Judicata

Next, Ace argues that "[l]eave to amend should also be denied because the claims of ten of the would-be Plaintiffs are barred by res judicata." (R. 98, Opp'n at 11.) Specifically, Ace argues that: (1) it has "obtained judgments in the Northern District of Illinois against at least six of the Plaintiffs based on their failure to comply with their obligations under their Brand and Membership Agreements," (*id.* at 11); (2) these default judgments "bar their fraud claims . . . because those judgments necessarily and conclusively established the validity of the very agreements these Plaintiffs now challenge," (*id.* at 12); and (3) Plaintiffs' fraud and fraudulent inducement claims were "compulsory counterclaims or related defenses" to Ace's original breach of contract claim and the "failure to raise such counterclaims or related defenses in

---

[17] This Court previously concluded that Plaintiff Mary Grollmus lacks prudential standing and cannot bring claims for the losses associated with her corporate franchise.

previous proceedings . . . constitute[s] a bar to related claims being raised later," (*id.*).[18] In response, Plaintiffs argue that res judicata does not bar their claims because their fraud and fraudulent inducement claims were not compulsory counterclaims in the previous actions "since Plaintiffs were not even aware of Ace's fraud (now at issue in this case) until after the default judgments were entered." (R. 105, Reply at 13.) While it appears that Plaintiffs' fraud and fraudulent inducement claims arise from the same transaction or occurrence as Ace's original breach of contract claims, because Plaintiffs have alleged that they did not discover their counterclaims until well after the default judgments were entered, at this juncture, the Court cannot conclude that Plaintiffs' claims are barred by res judicata.

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *see also Adams v. City of Indianapolis*, 742 F.3d 720, 735 (7th Cir. 2014); *Bernstein v. Bankert*, 733 F.3d 190, 225 (7th Cir. 2013). Res judicata is a judicial doctrine which makes a final, valid judgment conclusive on the parties as to all matters, facts, and law that were or could have been adjudicated in that proceeding. *Heiser v. Woodruff*, 327 U.S. 726, 733 (1946); *see also D & K Props. Crystal Lake v. Mut. Life Ins. Co. of N.Y.*, 112 F.3d 257, 259 (7th Cir. 1997) ("The doctrine of res judicata bars relitigation of claims that were or could have been asserted in an earlier proceeding."). "The doctrine of res judicata promotes predictability in the judicial process, preserves the limited resources of the judiciary, and protects litigants from the expense and disruption of being haled into court repeatedly." *Adams*, 742 F.3d at 735-36 (citation and internal quotation marks omitted). Res judicata "has

---

[18] Ace also argues that although default judgments were not entered against Plaintiffs George Martin, South Asheville Hardware, Gaylord Hardware, and Walter Drzewiecki, their claims are also barred by res judicata because these four Plaintiffs are privies of the parties who are the subject to the default judgments. (R. 98, Opp'n at 13.) The Court need not address Ace's privity argument because the Court concludes that Plaintiffs have sufficiently alleged that they did not discover any of fraud claims until well after the default judgments were entered.

three elements: (1) an identity of the parties or their privies in the first and second lawsuits; (2) an identity of the cause of action; and (3) a final judgment on the merits in the first suit." *Id.* at 736.

In addition, pursuant to the doctrine of res judicata, failing to file a compulsory counterclaim normally precludes the claim from being brought in a subsequent lawsuit. *Allan Block Corp. v. Cty. Materials Corp.*, 513 F.3d 912, 915 (7th Cir. 2008); *see also Consol. Coal Co. v. United Mine Workers of Am., Dist. 12, Local Union 1545*, 213 F.3d 404, 408 (7th Cir. 2000) (The "failure to plead a compulsory counterclaim bars as a matter of res judicata its being presented in a subsequent suit."); *Rudell v. Comprehensive Accounting Corp.*, 802 F.2d 926, 928 (7th Cir. 1986) ("[F]ailure to raise such counterclaims or related defenses in previous proceedings *does* constitute a bar to related claims being raised later."). Indeed, as the Seventh Circuit has recognized, "[b]oth precedent and policy require that res judicata bar a counterclaim when its prosecution would nullify rights established by the prior action." *Martino v. McDonald's Sys., Inc.*, 598 F.2d 1079, 1085 (7th Cir. 1979) (citation and internal quotation marks omitted).

There are four default judgments that Ace claims bar six of the Plaintiffs' claims. The first arises from a suit brought by Ace on October 13, 2009, against Gaylord Hardware, LLC, Walter Drzewiecki, Jr., Neil W. Drzewiecki, and Ann L. Drzewiecki, that alleged several breach of contract claims arising from various agreements—including the Membership Agreement. R. 1, Compl., *Ace Hardware Corp. v. Gaylord Hardware, L.L.C.*, 09-CV-06402 (N.D. Ill.). The Drzewieckis did not appear, answer, or otherwise plead and, on March 24, 2010, the court entered a default judgment against Neil Drzewiecki in the amount of $444,767.11. *Id.* at R. 14, Order. Second, on April 5, 2010, Ace brought suit against Queen City Trading Company and

George and Kathleen Martin and alleged several breach of contract claims arising from various agreements—including the Membership Agreement. R. 1, Compl., *Ace Hardware Corp. v. Queen City Trading Co.*, 10-CV-02102 (N.D. Ill.). The Martins did not appear, answer, or otherwise plead and, on July 13, 2010, the court entered a default judgment against Queen City Trading Company in the amount of $287,711.96. *Id.* at R. 21, Order. Third, on January 3, 2011, Ace brought suit against James and Robin Weintraub and alleged two breach of contract claims relating to personal guarantees that the Weintraubs had entered into with Ace regarding the purchase of merchandise for the Weintraubs' franchise. R. 1, Compl., *Ace Hardware Corp. v. Weintraub*, 11-CV-16 (N.D. Ill.). The Weintraubs did not appear, answer, or otherwise plead and, on June 22, 2011, the court entered a default judgment against James and Robin Weintraub in the amount of $328,697.16. *Id.* at R. 20, Order. Finally, on January 3, 2011, Ace brought suit against Clarke Retail, Inc., and William and Donna Clarke and alleged several breach of contract claims arising from various agreements—including the Membership Agreement. R. 1, Compl., *Ace Hardware Corp. v. Clarke Retail, Inc.*, 11-CV-00017 (N.D. Ill.). The Clarkes did not appear, answer, or otherwise plead and, on May 17, 2011, the court entered a default judgment against Clarke Retail, Inc., and William and Donna Clarke in the amount of $351,186.04. *Id.* at R. 15, Order.

As referenced above, res judicata requires a final judgment on the merits in the first suit between the parties or their privies of the subsequent suit. *Adams*, 742 F.3d at 736. It is well-settled that "[a] default judgment is a final judgment with res judicata effect." *Hawxhurt v. Pettibone Corp.*, 40 F.3d 175, 180 n.2 (7th Cir. 1994); *see also Schlangen v. Resolution Trust Corp.*, 934 F.2d 143, 146 (7th Cir. 1991); *Window World of Chicagoland, LLC v. Window World, Inc.*, 13 C 4624, 2015 WL 2193752, at *5 (N.D. Ill. May 7, 2015); *Buford v. Palisades*

*Collection, LLC*, 552 F. Supp. 2d 800, 807 (N.D. Ill. 2008). In addition, it is undisputed that at least six Plaintiffs were parties to the original default judgment orders. Specifically, default judgments were entered in favor of Ace and against Plaintiffs Neil Drzewiecki, Queen City Trading Company, James Weintraub, Clarke Retail, Inc., and William and Donna Clarke. Thus, the Court determines, for res judicata purposes, that there has been a prior final judgment on the merits between Ace and these six Plaintiffs.

Next, in determining whether these default judgments may be given preclusive effect in this subsequent suit between the same parties, the Court must determine whether Plaintiffs' fraud and fraudulent inducement claims are ones that could have been raised in the prior suits. Rule 13(a) governs compulsory counterclaims and states that a pleading "must state as a counterclaim any claim that . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." FED. R. CIV. P. 13(a)(1)(A). However, "[f]or rather obvious reasons, Rule 13(a) does not require the defendant to file as a compulsory counterclaim a claim that hasn't accrued yet, either because it has not yet come into being or, though it has, the plaintiff could not have discovered it." *Allan Block*, 512 F.3d at 920 (internal citations omitted).

Plaintiffs' fraud and fraudulent inducement claims arise out of the same transaction or occurrence that was the subject of Ace's original breach of contract claims: the execution of the Brand and Membership Agreements and establishment of Plaintiffs' Vision 21 franchises. If Plaintiffs entered into the Brand and Membership Agreements based upon Ace's alleged misrepresentations, this would undermine the very agreements that Ace sought to enforce in the first place. Thus, if Plaintiffs thought these agreements were not enforceable because they were procured by fraud, Plaintiffs should have raised the suspected fraud in the original lawsuits. As such, Plaintiffs' claims are likely compulsory counterclaims or legitimate defenses to Ace's

35

breach of contract claims.[19] *See e.g.*, *Rudell*, 802 F.2d at 926-29 (affirming district court's conclusion that res judicata barred franchisees' fraudulent inducement and common-law fraud claims in subsequent suit against franchisor and reasoning that to allow the franchisees' fraud claims to go forward "could undermine rights established in the arbitration and confirmation proceedings"); *Franklin's Systems Inc. v. Infanti*, No. 94-C-3830, 1995 WL 505930, at *4-5 (N.D. Ill. Aug. 17, 1995) (earlier default judgment barred subsequent claim arising out of alleged misrepresentations made in connection with the sale of a franchise); *Hill-Harriss v. Gingiss Int'l, Inc.*, No. 91 C 6682, 1992 WL 22705, at *5-7 (N.D. Ill. Feb. 5, 1992) (res judicata barred franchisees' fraudulent inducement and breach of contract claims against franchisor where claims could have been raised in prior proceeding).

However, the inquiry is not quite over. Unless Plaintiffs knew of or could have discovered Ace's alleged fraud before the default judgments were entered, it was not a claim that could have been litigated during the original proceedings for res judicata purposes. *See Allan*, 512 F.3d at 920. Plaintiffs claim that they simply did not know of the existence of their fraud claims until well after the default judgments were entered. Specifically, Plaintiffs argue: (1) Ace's breach of contract actions were filed prior to spring 2011, (R. 105, Reply at 13); (2) "[n]one of the Plaintiffs discovered facts sufficient to question Ace's allegedly fraudulent conduct until at least [s]pring, 2011," (*id.* at 14); (3) these specific six Plaintiffs did not have the "sufficient facts to even suspect fraud by Ace" until "the filing of the initial complaint" by the original plaintiffs on January 6, 2012, (*id.* at 14 n.12); and (4) therefore, the "discovery rule" prevents the application of res judicata in this lawsuit, (*id.*).

---

[19] This conclusion should not come as a surprise to Plaintiffs as their reply appears to concede that, if they had known about the alleged fraud, they would have been compulsory counterclaims to Ace's original breach of contract claims. (*See, e.g.*, R. 105, Reply at 13 ("A court has discretion in allowing a party to later plead a compulsory counterclaim."); *see also id.* ("Here, Plaintiffs did not include any counterclaim in the previous actions[.]").

36

Plaintiffs' reply invokes two relevant dates when arguing that they did not discover their claims until well after the default judgments had been entered. First, Plaintiffs focus on the Court's prior order, (R. 105, Reply at 13-14), which concluded that, "[f]or the purposes of this motion to dismiss . . . the discovery rule tolled the statute of limitations for Plaintiffs' claims of fraudulent inducement and fraud until sometime in the spring of 2011." *Putzier*, 50 F. Supp. 3d at 981. However, contrary to Plaintiffs' argument, the Court's prior holding specifically pertaining to the spring 2011 date has little bearing on the instant analysis. Plaintiffs' first amended complaint was far different from Plaintiffs' proposed fourth amended complaint. The first amended complaint was brought by six Plaintiffs—Marvin Putzier, Hometown Hardware, Inc., Don West, Midlothian Home Center, Inc., Douglas Lorenz, and Four Aces, LLC. (R. 21, First Am. Compl., at 1.) In addition, the first amended complaint explicitly alleged that "Plaintiffs . . . *did not know of the fraud until at least spring 2011.*" (*Id.* ¶ 87 (emphasis added).) Based upon this allegation, the Court concluded that the discovery rule tolled the statute of limitations for Plaintiffs' claims until spring 2011. *Putzier*, 50 F. Supp. 3d at 981. Since that opinion, the number of plaintiffs has grown exponentially and now includes over fifty plaintiffs. (R. 110-1, Fourth Am. Complaint.) The six Plaintiffs that are currently the subject of Ace's res judicata argument—Neil Drzewiecki, Queen City Trading Company, James Weintraub, Clarke Retail, Inc., and William and Donna Clarke—were not named in the first amended complaint. In addition, unlike the first amended complaint, the fourth amended complaint does not contain any allegations as to when exactly these six Plaintiffs (or *any* of the Plaintiffs, for that matter) discovered Ace's alleged fraud. Thus, the Court's prior holding that Plaintiffs had sufficiently alleged that they did not have knowledge of the facts that would have alerted them to Ace's

alleged wrongful conduct until spring 2011 has no relevance to the Court's instant res judicata determination.

Plaintiffs' second argument has more traction. Plaintiffs' reply states that these six Plaintiffs did not have "sufficient facts to even suspect fraud by Ace" until "the filing of the initial complaint" by the original Plaintiffs on January 6, 2012. (R. 105, Reply at 14 n.12.) While a plaintiff "may not amend his complaint in his response brief," *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreens Co.,* 631 F.3d 436, 448 (7th Cir. 2011), a plaintiff may add facts in a response brief "in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint," *Help at Home, Inc. v. Med. Capital, L.L.C.,* 260 F.3d 748, 752–53 (7th Cir. 2001). Plaintiffs' statement that these six Plaintiffs did not discover their claims until after the original complaint was filed in January 2012 is consistent with the general allegations set forth in the fourth amended complaint. Specifically, the fourth amended complaint contains a section entitled "Tolling of the Applicable Statute of Limitations" which contains nine paragraphs regarding how and why Plaintiffs did not discover the alleged wrongdoing sooner. (R. 110-1, Fourth Am. Compl. ¶¶ 376-84.) While this section puts forth allegations as to Plaintiffs' inability to discover their claims sooner, it does not include an exact date or time frame for the discovery of their claims. Therefore, Plaintiffs' recent and more specific assertion that these six Plaintiffs did not discover the alleged fraud until January 2012 is consistent with the allegations contained in the fourth amended complaint. Drawing all reasonable inferences in

favor of Plaintiff, the Court cannot conclude at this stage that Plaintiffs could have or did discover their claims during the pendency of Ace's original lawsuits.[20]

This holding is bolstered by the fact that res judicata is an affirmative defense, FED. R. CIV. P. 8(c)(1), which Ace has the burden of pleading and proving, *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). While Ace has put forth a persuasive argument that the prior judgments obtained by Ace may eventually preclude some of the Plaintiffs' claims, the fourth amended complaint simply does not admit the facts necessary to conclusively establish a res judicata defense. Nor are Plaintiffs required to plead around Ace's anticipated defenses. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("[P]laintiffs need not anticipate and attempt to plead around all potential defenses."); *see also Richardson v. Bank*, No. 05 C 5629, 2006 WL 1994574, at *1-2 (N.D. Ill. July 13, 2006) (res judicata is an affirmative defense that plaintiff need not plead around to survive a motion to dismiss); *Cent. States, Se. & Sw. Areas Pension Fund v. LaCasse*, 254 F. Supp. 2d 1069, 1072 (N.D. Ill. 2003) (denying motion to dismiss and concluding that, although the defendants argue that "the issue could have been litigated in a prior proceeding had the plaintiff exercised due diligence," the plaintiffs had sufficiently "assert[ed] that the [alleged wrongful] transfers came to their attention only" after "the District Court's entry of the [ ] judgment").

---

[20] The Court notes a potential discrepancy as it relates to Plaintiff Gaylord Hardware and two of its owners, Plaintiffs Walter Drzewiecki, Jr. and Neil Drzewiecki. Plaintiffs' reply states that "Ace did such a good job concealing the nature of its conduct that it was not until the filing of the initial complaint [on January 2, 2012,] that Plaintiffs Drzewiecki . . . had sufficient facts to even suspect fraud by Ace" and that Plaintiffs "did not include any counterclaim in the previous actions since Plaintiffs were not even aware of Ace's fraud . . . until after the default judgments were entered." (R. 105, Reply at 13-14, 14 n.12.) However, when Plaintiff Gaylord Hardware filed for bankruptcy in 2009, it listed in its Schedule B a "[p]otential lawsuit against ACE for breach of contract." R. 86-1, Am. Schedule B at 2, *In re Gaylord Ace Hardware, Inc.*, No. 09-24018 (Bankr. E.D. Mich.). Thus, the Court is suspicious of Plaintiffs' assertion that Plaintiffs Drzewiecki had no knowledge of a potential counterclaim against Ace during the initial lawsuit, when bankruptcy filings in a separate court indicate at least some hint of a potential lawsuit against Ace. Regardless, at this juncture, the Court must accept all of Plaintiffs' allegations regarding the discovery of their claims as true.

39

At bottom, the fourth amended complaint does not demonstrate that Plaintiffs could have

or did discover their fraud and fraudulent inducement claims during the pendency of Ace's

original lawsuits, such that they are now barred from bringing these claims in the present

proceeding. While Ace may be able to discover and present evidence to support a res judicata

defense at a later stage, Plaintiffs' fourth amended complaint is sufficient to proceed further.

Thus, the Court determines that Plaintiffs' claims are not barred by res judicata; and, because

Plaintiffs' amendment is not futile, the motion for leave to amend is granted.[21]

## IV.    Arbitration of Claims

Ace also argues that "[t]he Brand and Membership Agreements that Live Oak entered

into with Ace in 2010 contain binding arbitration agreements" and, thus, Plaintiffs "should not be

granted leave to file an amended complaint that includes" Plaintiffs Live Oak and its owner,

Joseph Flammio. (R. 98, Opp'n at 14.) In response, Plaintiffs claim that Flammio executed two

different Brand and Membership Agreements for two different stores—one that contained an

arbitration clause and one that did not. (R. 105, Reply at 15.) Thus, Plaintiffs argue that the

"claims originated from opening the store in 2009, and Ace's arbitration clause is inapplicable

because Mr. Flammio never agreed to arbitrate those claims." (*Id.*)

The party seeking to compel arbitration has the burden of showing the existence of an

agreement to arbitrate. *Pearson v. United Debt Holdings*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill.

2015); *see also Fox v. Nationwide Credit, Inc.*, No. 09-cv-7111, 2010 WL 3420172, at *2 (N.D.

Ill. Aug. 25, 2010); *Vazquez v. Cent. States Joint Bd.*, 547 F. Supp. 2d 833, 868 (N.D. Ill. 2008).

Once it is established that there is a valid arbitration agreement, the party opposing arbitration

must "identify a triable issue of fact concerning the existence of the agreement in order to obtain

---

[21] While res judicata does not bar these Plaintiffs' claims, the Court has already concluded that Plaintiffs Neil Drzewiecki, James Weintraub, and William and Donna Clarke lack prudential standing and cannot bring claims for the losses associated with their corporate franchises.

a trial on the merits of the contract." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). This is equivalent to the material factual dispute standard employed at summary judgment. *Id.*

Ace fails to carry the initial burden of showing the existence of an agreement to arbitrate. Ace did not file a motion to compel arbitration, does not identify the standard for the Court to apply when determining whether to compel arbitration, does not specifically reference the provision in the Brand and Membership Agreements that requires Plaintiffs Live Oak and Flammio to arbitrate their claims, and devotes a mere three sentences in its opposition to its arbitration argument. Ace's opposition makes the conclusory statement that the "Brand and Membership Agreements that Live Oak entered into with Ace in 2010 contain binding arbitration agreements" and, in support, cites to the "November 8, 2010 Membership and Brand Agreements" attached as an exhibit. (R. 98, Opp'n at 14; *see also* R. 98-10, Ex. J to Opp'n) A closer inspection of this exhibit reveals two sets of agreements—a Brand and Membership Agreement executed in October 2008 for a store located at "3555 9th St SW, Vero Beach, FL," (R. 98-10 at 1-18), and a Brand and Membership Agreement, dated April 2009 but executed in 2010, for a store located at "615 Beachland Blvd, Vero Beach, FL," (*id.* at 19-40). As Plaintiffs correctly point out, the 2008 Brand and Membership Agreement does not require the arbitration of claims, but the 2010 Brand and Membership Agreement does require arbitration. (*Id.* at 27-28.) Notably, Plaintiffs Live Oak and Flammio's fraud and fraudulent inducement claims relate to both of Live Oak's stores, and not just the store that was the subject of the 2010 Brand and Membership Agreement containing an arbitration provision. (*See, e.g.*, R. 110-1, Fourth Am. Compl. ¶ 505 ("Ace knowingly manipulated the pro formas, in direct contravention of its claims of using tested, proven, conservative, yet accurate, methods for projections using actual historical

store performances, so that the pro formas would make it appear as though Mr. Flammio's *stores* would be not just viable, but successful." (emphasis added)).)

Thus, in light of the multiple Brand and Membership Agreements, Ace has failed to demonstrate that a binding arbitration agreement requires Plaintiffs Live Oak and Flammio to arbitrate their claims against Ace.[22] Ace may be able to satisfy the standard by presenting evidence at a later stage, but at this stage, the Court cannot conclude that arbitration is required. As such, Plaintiffs' motion for leave to amend as to Plaintiff Live Oak is not futile and therefore granted.[23]

## V.    Class Allegations

Finally, at the end of the fourth amended complaint there is a section entitled "Class Allegations," stating that the allegations therein are "brought in the alternative and solely herein for the purpose of preserving issues on appeal." (R. 110-1, Fourth Am. Compl. ¶¶ 728-735 (capitalization and emphasis omitted).) Following the general class allegations, Plaintiffs allege fraudulent inducement and fraud claims on "behalf of the class," and include a section entitled "Alternative Class Prayer for Relief." (*Id.* ¶¶ 736-747.) Ace argues that Plaintiffs "have repeatedly represented to this Court that any amended complaint they filed would remove Plaintiffs' class allegations," and that this alternative pleading should not be permitted as Ace is unable "to locate any case from any jurisdiction that has ever recognized the concept of pleading

---

[22] The Court recognizes that Judge Darrah previously concluded that Ace and two of the original Plaintiffs, Advanced Caregivers and William Bloodworm, are required to arbitrate similar claims. *Ace Hardware Corp. v. Advanced Caregivers, LLC*, No. 1:12–CV–01479, 2012 WL 5197942 (N.D. Ill. Oct. 18, 2012). However, Judge Darrah's reasoned determination was made after Ace filed a motion to compel arbitration pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, and the parties extensively briefed the issue. *Id.* at *1. In the instant case, this Court has simply not been presented with sufficient information to conclude that Plaintiffs Live Oak and Flammio are required to arbitrate their claims.

[23] The Court has already concluded that Plaintiff Flammio lacks prudential standing and cannot bring claims for the losses associated with his corporate franchise.

42

class claims in the alternative." (R. 98, Opp'n at 15.) In response, Plaintiffs state that "[c]onsistent with Plaintiffs' representations to the Court, they are not proceeding forward at trial as a class action," but that the claims are "brought solely in the alternative and for purposes of appeal." (R. 105, Reply at 16.)

The Court agrees that Plaintiffs have repeatedly represented that they were abandoning their class allegations. (R. 80, Mem. in Support of Pls.' Mot. for Extension at 1 (the "Second Amended Complaint . . . will remove Plaintiffs' class allegations"); R. 83, Mem. in Support of Pls.' Mot. for Second Extension at 2 ("Plaintiffs suggested to the Court . . . that the best course of action would be to remove the class allegations in their Second Amended Complaint[.]"); R. 105, Reply at 16 ("[Plaintiffs] are not proceeding forward at trial as a class action."); R. 110, Mot. for Leave to File Fourth Am. Compl. ¶ 7 n.1 ("The Second Amended Complaint was the first complaint filed in this action that was not brought as a class action."). As such, the Court will treat these allegations as abandoned.[24]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to file a fourth amended complaint (R. 110) is GRANTED IN PART AND DENIED IN PART. In summary, while all of the Individual Plaintiffs lack standing to pursue their claims, the corporate entity Plaintiffs are permitted to proceed with their individual claims as stated herein. Plaintiffs are granted leave to file a fifth amended complaint consistent with this opinion, which will be their last and final

---

[24] The Court is perplexed at Plaintiffs' statement that they are preserving their class allegations for appeal. The Court has never made a determination regarding the adequacy of Plaintiffs' class allegations or their motion for class certification. For nearly two years now, Plaintiffs have repeatedly indicated that they are no longer seeking to proceed as a class. As such, the Court is treating their class allegations and associated claims as abandoned—per Plaintiffs' request. In addition, while the present opinion is not a determination as to whether Plaintiffs' repleading of their class allegations adequately preserves this issue for appeal, the Seventh Circuit has held that a plaintiff cannot appeal voluntary dismissal of his own claims because "[l]itigants aren't aggrieved when the judge does what they want." *Fairley v. Andrews*, 578 F.3d 518, 521 (7th Cir. 2009).

43

effort to state any and all viable claims that they intend to pursue in this lawsuit. No further amendments will be permitted. Plaintiffs' fifth amended complaint must be filed on or before May 6, 2016. The parties shall appear for a status hearing on June 9, 2016, at 9:45 a.m. Finally, the parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities prior to the status hearing.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: March 30, 2016**